# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENEVA WOODROW, | NO. CV 04-756 (Mc) |
| Plaintiff, | |
| | MEMORANDUM OF DECISION |
| v. | AND ORDER IN A SOCIAL |
| | SECURITY CASE |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | |
| Defendant. | |

The plaintiff, GENEVA WOODROW, filed the present action for review of a final determination of the Commissioner of Social Security (the "Commissioner") that the plaintiff is not disabled and, therefore, not entitled to disability insurance benefits. For the reasons set forth below, the court finds that substantial evidence supports the determination of the Commissioner that the plaintiff is not disabled. The decision of the Commissioner, therefore, is affirmed.

## BACKGROUND

The plaintiff protectively filed an application for disability insurance benefits under the Social Security Act (the "Act") on January 29, 2002. [Administrative Record ("AR") 48-50, 51.] The

Commissioner denied the application [AR 40-43], and, at the plaintiff's request, an administrative hearing was held before Administrative Law Judge Walter J. Fisher (the "ALJ") on March 5, 2003. [AR 22-38.] On July 11, 2003, the ALJ filed a decision concluding that the plaintiff was not under a disability as defined in the Act at any time through the date of the decision. [AR 12-15.] The Appeals Council denied the plaintiff's request for review of the ALJ's decision. [AR 5-7.] The decision of the ALJ stands as the final decision of the Commissioner.

Thereafter, the plaintiff filed the present action. The plaintiff and the Commissioner have consented to proceed before a United States Magistrate Judge. The parties have entered into a joint stipulation setting forth their arguments.

## STANDARDS OF REVIEW

The court must sustain the findings of the Commissioner unless: (a) they are not supported by substantial evidence in the record as a whole; or (b) the Commissioner applied an improper legal standard. See 42 U.S.C. 405(g); Gordon v. Secretary of Health and Human Services, 803 F.2d 1071, 1072 (9th Cir. 1986). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988). "Substantial evidence" is evidence a "reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. at 402; Gordon v. Secretary of Health and Human Services, 803 F.2d at 1072.

This court must review the record as a whole and consider adverse as well as supporting evidence. See Green v. Heckler, 803 F.2d 528,

1  529-30 (9th Cir. 1986).  Where evidence is susceptible of more than
2  one rational interpretation, the court must sustain the Commissioner's
3  decision.  <u>See</u> <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1453 (9th Cir.
4  1984).

## THE FIVE-STEP SEQUENTIAL EVALUATION

6  The Commissioner has established a five-step sequential
7  evaluation for determining whether a person is disabled.  First, the
8  Commissioner determines whether the person is engaged in "substantial
9  gainful activity."  If so, the Commissioner denies disability
10 benefits.  Second, if the person is not so engaged, the Commissioner
11 determines whether the person has a medically severe impairment or
12 combination of impairments.  If the person does not have a severe
13 impairment or combination of impairments, the Commissioner denies
14 benefits.  Third, if the person has a severe impairment, the
15 Commissioner determines whether the impairment meets or equals one of
16 a number of "listed impairments."  If the impairment meets or equals a
17 "listed impairment," the Commissioner conclusively presumes that the
18 person is disabled.  Fourth, if the impairment does not meet or equal
19 the "listed impairments," the Commissioner determines whether the
20 impairment prevents the person from performing past relevant work.  If
21 the person can perform past relevant work, the Commissioner denies
22 benefits.  Fifth, if the person cannot perform past relevant work, the
23 burden shifts to the Commissioner to show that the person is able to
24 perform other kinds of work.  The person is entitled to disability
25 benefits only if he or she is unable to perform other work.  See 20
26 C.F.R. § 404.1520 and 20 C.F.R. § 416.920; <u>Bowen v. Yuckert</u>, 482 U.S.
27 137, 140-42, 107 S.Ct. 2287, 96 L.Ed 119 (1987).
28 ///

**FINDINGS OF THE ALJ**

The plaintiff was born October 4, 1952. [AR 13, 52.] The plaintiff has a high school education, and she completed some college courses as well. [AR 13, 66.] The plaintiff has past relevant work experience as a security officer and a laboratory technician. [AR 13.] The plaintiff alleges that she has been unable to work since October 8, 2001, because of back pain. [AR 48, 60.] The plaintiff also alleges that she has an enlarged heart. [AR 33; see AR 8.]

The ALJ found that the plaintiff had not engaged in substantial gainful activity during the period at issue. The ALJ found that the plaintiff had hypertension, obesity, and a lumbar sprain and radiculopathy but that the plaintiff did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Regulations No. 4.

The ALJ found that the plaintiff's allegations of "excess" pain and functional limitations were not credible, and he determined that the plaintiff retained the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently. The ALJ further determined that the plaintiff could not do repetitive bending and stooping.

The ALJ found that the plaintiff's past relevant work as a security officer, as performed in the national economy, did not require the performance of work-related activities precluded by the above limitations. Accordingly, the ALJ concluded that the plaintiff was not prevented from performing her past relevant work as a security officer and that the plaintiff was not under a "disability" as defined in the Act at any time through the date of the decision. [AR 15.]
///

**THE PLAINTIFF'S CONTENTIONS**

The plaintiff contends that the ALJ failed properly to translate her restrictions written in workers' compensation terminology into equivalent Social Security terminology. The plaintiff further contends that the ALJ failed properly to consider her obesity consistent with Social Security Ruling 02-01p. Last, the plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting the plaintiff's subjective limitations.

**DISCUSSION**

**The opinion of Dr. Gustav Salkinder**

The plaintiff began treatment with Dr. Gustav Salkinder on October 30, 2001, in connection with the plaintiff's work-related injury. Dr. Salkinder prescribed medications, a stabilizing back orthosis, physical therapy, chiropractic care, epidural injections, a TENS unit, and acupuncture during the course of his treatment. Dr. Salkinder also referred the plaintiff for an MRI and electrodiagnostic testing. [AR 102-03, 154.]

On June 13, 2002, Dr. Salkinder reported that the plaintiff's condition had "gradually improved and stabilized," and he issued his permanent and stationary report limiting the plaintiff to "light work, which contemplates that the individual can do work in a standing or walking position with a minimal of demands for physical effort," (sic) using standard workers' compensation terminology existing at that time. [AR 109.]

The opinion of Dr. Salkinder, being that of a treating physician, would generally be entitled to greater weight than the opinions of nontreating physicians. This is so because the treating physician is employed to cure and has a greater opportunity to know and observe his

patient than a physician who only saw the claimant on one occasion or a physician who has never seen the plaintiff at all. Andrews, 53 F.3d at 1041. This is not to say, however, that the opinion of even a treating physician is "necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989), citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n. 7 (9th Cir. 1989). However, if the ALJ chooses to reject even the controverted opinion of a treating physician, the ALJ must cite specific and legitimate reasons for doing so supported by substantial evidence in the record. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).

The ALJ, however, evidently considered Dr. Salkinder's assessment to be consistent with the ALJ's own residual functional capacity assessment. The plaintiff contends that it was not. Therefore, argues the plaintiff, the ALJ was required to cite specific and legitimate reasons for disregarding Dr. Salkinder's opinion. [Joint Stipulation at 6.]

The workers' compensation definition of light work as found in the Schedule for Rating Permanent Disabilities[1] "contemplates [that] the individual can do work in a standing or walking position with a minimum of demand for physical effort." See Nicky Blair's Restaurant v. Workers' Compensation Appeals Board, 109 Cal. App.3d 941, 950, n. 8, 167 Cal.Rptr. 516, 45 Cal. Comp. Cases 876 (1980), citing the Schedule for Rating Permanent Disabilities. The Social Security definition of light work is work which "involves lifting no more than

---

[1] The California Schedule for Rating Permanent Disabilities has since been completely revised.

- 6 -

1  20 pounds at a time with frequent lifting or carrying of objects
2  weighing up to 10 pounds.  Even though the weight lifted may be very
3  little, a job is in this category when it requires a good deal of
4  walking or standing, or when it involves sitting most of the time with
5  some pushing and pulling of arm or leg controls." 20 C.F.R. §
6  404.1567(b).

7  The plaintiff contends that the ALJ failed adequately to address
8  the differences in these definitions as he is required to do.
9  <u>Desrosiers v. Secretary of Health and Human Services</u>, 846 F.2d 573,
10 576 (9th Cir. 1988).  However, the ALJ's implicit finding that there
11 were no significant differences between Dr. Salkinder's limitation to
12 light work and his own residual functional capacity assessment is
13 based upon reasonable inference and substantial evidence.

14 First, it is not at all clear that the definition of light work
15 under the Schedule for Rating Permanent Disabilities is inconsistent
16 with the definition of light work under Social Security.  Assuming
17 <u>arguendo</u> that lifting twenty pounds from very little up to one-third
18 of the workday exceeds "a minimum of demand for physical effort,"
19 under the Social Security definition, not all light jobs require
20 lifting up to twenty pounds.  The plaintiff ignores that portion of
21 the definition of light work as found in 20 C.F.R. § 404.1567(b),
22 which states that even though the weight lifted may be only a
23 negligible amount, a job would still be considered light "when it
24 requires a good deal of walking or standing."
25 ///
26 ///
27 ///
28 ///

Regardless, the plaintiff's argument that "[n]o reasonable person would conclude that lifting and carrying up to 20 pounds for 1/3 of the workday[2] would qualify as 'minimal demands of physical effort'" is unpersuasive. [Joint Stipulation at 5-6.]  Although Dr. Salkinder did not define what he meant by "a minimal of demands for physical effort," his understanding of these terms can be reasonably inferred from his reports.  On January 29, 2001, less than three months following the plaintiff's alleged onset date, Dr. Salkinder requested that the plaintiff's employer provide the plaintiff with modified duties.  The only restrictions indicated by Dr. Salkinder were that the plaintiff avoid "repetitive bending/stooping from the waist, no lifting more than 15 lbs."  [AR 103, 133.]  Inasmuch as when he found the plaintiff permanent and stationary five months later, Dr. Salkinder reported that the plaintiff's condition had "gradually improved and stabilized," it was a reasonable inference for the ALJ to consider that after additional recuperative time and treatment, Dr. Salkinder's definition of "light work" was consistent with his own and that the plaintiff could then lift at least twenty pounds occasionally instead of the previously reported fifteen pounds, although the ALJ found that the plaintiff still was precluded from repetitive bending and stooping.  [AR 13, 14.]  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982)(The ALJ "is entitled to draw inferences logically flowing from the evidence").

///

///

---

[2] The definition of "occasionally" in Social Security is generally considered to be occurring "from very little up to one-third of the time."  SSR 83-10, SSR 83-14, SSR 85-15, SSR 96-9p.

- 8 -

1  The ALJ, therefore, did not reject Dr. Salkinder's opinion.
2  Rather, he interpreted it. See Orteza v. Shalala, 50 F.3d 748, 750
3  (9th Cir. 1995).

**The plaintiff's past relevant work**

The plaintiff also disputes the ALJ's finding that the plaintiff could return to her past relevant work. The plaintiff argues:

1) That "[t]he job of security guard described in the DOT as 'merchant patroller' lists as a job specification the need to 'apprehend unauthorized persons;'" the plaintiff contends that "[n]o reasonable person would conclude that a person that is limited to a job that requires a minimum demand of physical effort was qualified to 'apprehend unauthorized persons'" [Joint Stipulation at 6, n. 1];

2) That Dr. Salkinder concluded that the plaintiff was unable to perform her past relevant work [Joint Stipulation at 4].

However, Dr. Salkinder's opinion that the plaintiff was unable to return to her past relevant work is not persuasive because Dr. Salkinder's assessment was confined to the issue of the plaintiff's inability to "return to her pre-injury occupation," referring to the one specific job which the plaintiff held at the time of injury. [AR 101-02, 109.] Del Taco et al. v. Workers' Compensation Appeals Board, 79 Cal. App.4th 1437, 1441-42, 94 Cal. Rptr.2d 825 (2000). In contrast, the term "past relevant work" for purposes of Social Security includes any work performed by the plaintiff "within the past 15 years, that was substantial gainful activity, and that lasted long

///

enough for [the plaintiff] to learn to do it." 20 C.F.R. § 404.1560(b)(1).

Moreover, the term "past relevant work" refers not only to the "actual functional demands and job duties of a particular past relevant job," but also to the "functional demands and job duties of the occupation as generally required by employers throughout the national economy." Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001), citing SSR 82-61.

The ALJ did not find that the plaintiff was able to perform her last job as she performed it. The plaintiff's description of her last job in the forms she completed as part of the application process and the plaintiff's description of her last job as related to her physician all indicate that the particular job which she held at the time of her injury was beyond her capabilities, indicating as the plaintiff had that this job required lifting up to fifty pounds. [AR 61, 77, 102; see AR 147.] Rather, the ALJ found that the plaintiff could perform her past relevant work as generally performed in the national economy, relying upon the Dictionary of Occupational Titles,[3] which describes the plaintiff's past relevant work as "light," utilizing the same definition of "light work" as used by Social Security. See D.O.T. 372.667-034. [AR 13.]

However, the plaintiff argues that no reasonable person would conclude that a person limited to "a minimal of demands for physical effort" could perform the work of "merchant patroller." Merchant patroller, D.O.T. 372.667-038, "apprehends unauthorized persons," and

---

[3] "The DOT is 'the Secretary's primary source of reliable job information.'" Johnson v. Shalala, 60 F.3d 1428, 1434 n. 6 (9th Cir. 1995), quoting Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1980).

may carry a firearm.  The ALJ did not find that the plaintiff could perform the work of a "merchant patroller," and there is no indication that the plaintiff's security jobs were as a "merchant patroller."[4] [See AR 25-27, 77, 78, 101-02.]  The ALJ found that the plaintiff was able to perform her past relevant work as a security guard, D.O.T. 372.667-034.  [AR 13.]  This job does not necessarily require that the security guard apprehend miscreants although this is listed as one of a wide variety of tasks which may be required in the various jobs encompassed in this category.  Even so, the D.O.T. description of this job, 372.667-034, specifically indicates that this job is also light, contrary to the plaintiff's assertions, without citation to evidence in the record, that such a description is inconsistent with light work.

    Accordingly, there was no inconsistency between the ALJ's finding that the plaintiff could perform light work with the ALJ's conclusion that the plaintiff was able to perform her past relevant work as performed in the national economy, and the ALJ was entitled to rely upon the D.O.T.  Pinto, 249 F.3d at 845 (" . . . [t]he best source for how a job is generally performed is usually the Dictionary of Occupational Titles").  In fact, the ALJ's light work finding appears to be consistent with the description of one of the plaintiff's past jobs as the plaintiff actually performed it.  [AR 78.]  This job did not require that the plaintiff lift twenty pounds but rather that she do a significant amount of standing and walking.  [AR 78.]  20 C.F.R. § 404.1567(b)(1).

---

[4] Even so, the job of "merchant patroller" is also considered "light."

**The plaintiff's obesity**

The plaintiff contends that the ALJ failed properly to consider the "interactive effects" of the plaintiff's obesity. The plaintiff claims that with a BMI (body mass index) of 32.9, her obesity is "extreme."[5] [Joint Stipulation at 11, 12.] The plaintiff relies on Social Security Ruling 02-01p, the report of Dr. Michel J. Mazouz, dated May 8, 2002, and Celaya v. Halter, 332 F.3d 1177, 1181-83 (9th Cir. 2003).

SSR 02-01p states that obesity is a medically determinable impairment, the effects of which must be considered in combination with the plaintiff's other impairments. SSR 02-01p further recognizes that the combined effects of obesity with other impairments can be greater than the effects of each impairment considered separately. However, SSR 02-01p also makes it very clear that although an individual with a BMI of 30.0 or above is generally, but not always, considered to suffer from "obesity," even those with extreme obesity reflected by a BMI of 40 or more may not necessarily suffer from any "specific degree of functional loss."

SSR 02-01p further notes that obesity is a "'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an

---

[5] At the outset, it should be noted that the medical evidence indicates that the plaintiff's BMI was 31 when she weighed 210 pounds. [AR 117.] At the time of the hearing, the plaintiff weighed approximately 198 pounds. [AR 29.] Although Dr. Mazouz characterized the plaintiff's obesity as "extreme," according to the National Institutes of Health, an individual is not even considered obese unless the BMI is 30. Therefore, with a BMI of 31, the plaintiff's obesity is not considered "extreme" by the NIH. It is only when an individual's BMI is at least 40 that his or her obesity is considered "extreme." SSR 02-01p.

- 12 -

individual's physical or mental ability to do basic work activities." However, the fact that the plaintiff's "obesity" in combination with her back impairment and hypertension was considered "severe" at step two does not lead to any inference that there are other additional limitations due to the obesity or that the obesity, by itself, was severe as the plaintiff contends. [Joint Stipulation at 12.]  This is so because in determining whether an impairment or combination of impairments is "severe," under 20 C.F.R. § 404.1523, there is no separate assessment of the "contribution of each impairment to the restriction of his or her activity as if each impairment existed alone," and no assumptions will be made "about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. [The Commissioner] will evaluate each case based on the information in the case record."  SSR 85-28, SSR 02-01p.

In the Celaya case, the Ninth Circuit found that the ALJ erred when he failed to consider the combined effects of Celaya's obesity with her other impairments of diabetes and hypertension although Celaya herself had never claimed obesity as a disabling impairment. Nonetheless, the Court found that the ALJ was obligated to consider Celaya's obesity in a "multiple impairment analysis" because "it was raised implicitly in Celaya's report of symptoms.  Second, it was clear from the record that Celaya's obesity was at least close to the listing criterion, and was a condition that could exacerbate her reported illnesses.  Third, in light of Celaya's pro se status, the ALJ's observation of Celaya and the information on the record should
///

have alerted him to the need to develop the record in respect to her obesity." Celaya, 332 F.3d at 1182.

The plaintiff argues that the factual circumstances of the her case closely match those of Celaya. The plaintiff is 5'7 and weighed 210 pounds. Celaya, according to the plaintiff, was also 5'7" and weighed between 205-212 pounds. Therefore, argues the plaintiff, "the Defendant's implication that Ms. Woodrow was not obese enough to warrant analysis is without merit." [Joint Stipulation at 13, n. 8.] The plaintiff, moreover, like Celaya was unrepresented and, therefore, likely was not aware that obesity could be a partial basis for her claims of disability. [Joint Stipulation at 13.]

However, the Celaya case is distinguishable from the plaintiff's case in several ways, even assuming that the unrepresented plaintiff was unaware that obesity could be a partial basis for her claims of disability. First, the fact that the ALJ did not list any additional limitations due to the plaintiff's obesity does not mean that the ALJ failed to consider the plaintiff's obesity. To the contrary, it is clear that, unlike in Celaya, the ALJ had, in fact, considered the plaintiff's obesity, inquiring as he did about the plaintiff's weight at the hearing and finding as he did that the plaintiff had the medically determinable impairment of obesity. However, it is equally clear that the ALJ did not find that the plaintiff had any additional limitations on account of her obesity, and under SSR 02-01p, the ALJ was not required to find that just because the plaintiff was obese, she necessarily had additional restrictions. "Here, the record does not indicate that [the plaintiff's] obesity exacerbated her other impairments (other than possibly her back pain)." Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005). Although the plaintiff

persistently argues that "the evaluation of the effect of obesity on the ability to perform sustained work and perform ordinary work movements is an indispensable consideration when assessing the disability of a claimant who is obese," the plaintiff cites nothing in the record to show that her ordinary work movements were limited due to obesity or that the plaintiff suffered from such obesity that she could not sustain work. [Joint Stipulation at 11; see also Joint Stipulation at 10.] Except for the plaintiff's complaints of back pain, the plaintiff's acupuncturist reported that the plaintiff's past medical history was "non-contributory to the patient's current medical complaints." [AR 113.] Except for the limitation of motion in the site of the plaintiff's injury, her low back, there is normal range of motion of all other areas of the spine and the joints [AR 104, 105; AR 149-51], and the plaintiff was observed "to be able to move into and out of the consultation room without visible problems" [AR 113].

The only evidence that the plaintiff cites as support for her contentions that she has additional limitations is Dr. Mazouz's report of May 8, 2002. However, Dr. Mazouz did not indicate that the plaintiff actually had any restrictions due to her obesity, but rather that because the lumbar area is a "weight sensitive area," the plaintiff would benefit from weight reduction to promote healing and pain reduction. Dr. Mazouz, moreover, rather emphatically stated that the plaintiff did not have any disability "on an internal medicine standpoint." [AR 117.]

On the other hand, the plaintiff's treating orthopedist, Dr. Salkinder, never described the plaintiff as obese but rather "well-nourished" [AR 103, 148], and nowhere did Dr. Salkinder express his opinion that the plaintiff had any restrictions or exacerbation of

symptoms due to obesity or that the plaintiff required any treatment directed toward weight loss to relieve the symptoms arising out of the plaintiff's industrial injury. See <u>Braewood Convalescent Hospital, et al. v. Workers Compensation Appeals Board and Eugene Bolton</u>, 34 Cal. 3d 159, 165-66, 666 P.2d 14, 193 Cal.Rptr. 157, 48 Cal. Comp. Cases 566 (1983). Thus, Dr. Salkinder's failure to indicate considerations of obesity in his assessment of permanent disability and his failure to include weight loss as a treatment measure does not support the plaintiff's contentions but rather supports the ALJ's conclusion that additional considerations due to obesity were not warranted.

Moreover, the plaintiff's case is otherwise distinguishable from that of <u>Celaya</u>. The Ninth Circuit's holding in Celaya was premised on the fact that Celaya's obesity "was raised implicitly in Celaya's report of symptoms." In the plaintiff's case, there is no indication even of an implicit report of symptoms related to obesity. The Court also found that "it was clear from the record that Celaya's obesity was at least close to the listing criterion" at that time and that the plaintiff's obesity "was a condition that could exacerbate her reported illnesses. Third, in light of Celaya's pro se status, the ALJ's observation of Celaya and the information on the record should have alerted him to the need to develop the record in respect to her obesity." <u>Celaya</u>, 332 F.3d at 1183. Thus, the extreme nature of Celaya's obesity was a prominent consideration in the <u>Celaya</u> case. Celaya's weight was close to listing-level, and the Court apparently believed that Celaya's extreme obesity should have been readily apparent to the ALJ and sufficient to alert the ALJ that further development was needed. However, no such factors exist in the plaintiff's case, notwithstanding the plaintiff's contention to the

contrary. Celaya was not 5'7" as the plaintiff alleges but either 53 inches (4'5") or 57 (4'9") inches at best. (Compare Joint Stipulation, p. 13, n. 8 with Celaya, 332 F.3d at 1179). At 209 pounds, Celaya, therefore, came very close to meeting the listing level weight of 212 pounds for a woman of her height. Section 10.10, Appendix 1, Subpart P, 20 C.F.R. Part 404 (1999).[6] On the other hand, the plaintiff at 5'7" even at 210 pounds fell far below Celaya's observable extreme obesity.[7] In fact, although Dr. Mazouz diagnosed obesity, Dr. Salkinder did not, nor did the plaintiff's physician at the Veterans Administration. To contrary, the latter merely described the plaintiff as being "moderately overweight." [AR 181.]

Therefore, there was no error in the ALJ's failure to include additional limitations arising out of the plaintiff's obesity. The plaintiff has not met her burden to establish that such restrictions existed.[8]

///
///

---

[6] The obesity listing has since been eliminated.

[7] Under the listings existing in 1999, the plaintiff, at 5'7", would have had to weigh 282 pounds to have satisfied the weight requirement of Listing 10.10.

[8] Contrary to the plaintiff's suggestion, the lack of representation, while triggering a heightened duty fully and fairly to develop the record, does not shift the burden on the Commissioner to provide evidence of the disabling effects of the plaintiff's obesity. The plaintiff fails to cite any support for this proposition. [Joint Stipulation at 13.] Although the plaintiff suggests that the ALJ failed in his duty to develop the record, the plaintiff is silent as to what type of inquiry should have been made when the record is sufficiently adequate and unambiguous to allow the proper evaluation of the evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

**The ALJ's credibility finding**

Once the plaintiff has established by objective or clinical findings the existence of a medically determinable impairment which may reasonably account for the symptoms alleged, although not necessarily the severity alleged, in the absence of malingering, the ALJ may not reject symptom allegations without providing clear and convincing reasons for doing so. Batson v. Commissioner of the Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004).

The ALJ found that the plaintiff was not entirely credible citing the lack of objective findings to support the degree of symptoms alleged and the lack of treatment in over a year.

Although the lack of objective findings to support the degree of limitation alleged cannot be the sole reason for finding the plaintiff not credible, it is, nevertheless, one of the factors to be considered. Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). In this case, the ALJ noted the opinion of the plaintiff's treating orthopedist, Dr. Salkinder, that the plaintiff could perform light work, and the ALJ noted fairly unremarkable findings other than decreased range of motion and some slightly decreased sensation in the left lower extremity. [AR 14.] See Matney v. Sullivan, 981 F. 2d 1016, 1019-20 (9th Cir. 1992)(affirming the ALJ's finding that Matney could perform light work with certain limitations, noting that there was no evidence revealing "significant motor loss, muscle weakness or sensory or reflex loss, with the exception of loss of the right achilles reflex.")

Next, the ALJ noted the lack of any medical treatment in over a year. The ALJ reasoned that "[c]ertainly, the claimant would be receiving monthly medical care, if she suffered from disabling pain."

- 18 -

[AR 14.] "The ALJ is permitted to consider lack of treatment in his credibility determination." Burch, 400 F.3d at 681.

The plaintiff, however, disputes that there is evidence of such a lack of treatment, arguing that at the time of the hearing, it had only been nine months instead of a year that the plaintiff last saw Dr. Salkinder. However, whether nine months or a year is hardly significant. Id. (Burch's failure to seek any consistent treatment in four months considered as one of the valid reasons for discounting her complaints of pain). The plaintiff also points to Dr. Salkinder's recommendations for future medical care. However, this treatment was recommended only if the plaintiff's condition "deteriorates," worsens, or was exacerbated. [AR 109.] Whether, as the plaintiff argues, this means that the plaintiff's condition could deteriorate is speculative. [Joint Stipulation at 18.] The issue is the plaintiff's disability at the time of the decision, not what it could be at some future point in time.

Therefore, the ALJ provided sufficiently clear and convincing reasons for finding the plaintiff not entirely credible.

**CONCLUSION**

After careful consideration of the complaint, Joint Stipulation of the parties, and the transcript of the record, and in accordance with the foregoing discussion, the magistrate judge finds that the decision of the Commissioner is supported by substantial evidence and that the Commissioner applied the proper legal standards.

///
///
///
///

**ORDER**

IT IS ORDERED that judgment be entered in favor of the Commissioner and against the plaintiff.

Dated:   August 25, 2005

                              _____/s/_____
                              JAMES W. McMAHON
                              United States Magistrate Judge