UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| ENRIQUETA GARNICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JO ANNE B. BARNHART, ) <br> Commissioner of the ) <br> Social Security Administration, ) <br> ) <br> Defendant. ) <br> ) | Civil No. CV 03-07889 (Mc) <br><br> MEMORANDUM OF DECISION <br> AND ORDER IN A <br> SOCIAL SECURITY CASE |

The plaintiff, Enriqueta Garnica, filed the present action for review of a final determination of the Commissioner of the Social Security Administration ("the Commissioner"). After reviewing the Administrative Record ("AR") and the applicable law, the Court concludes that there is substantial evidence in support of the finding of the Commissioner that the plaintiff is not disabled and not entitled to Supplemental Security Income ("SSI") or Disability Insurance Benefits ("DIB"). Accordingly, the Court grants judgment for the Commissioner and against the plaintiff.

///

///

**BACKGROUND**

The plaintiff filed an application for DIB under the Social Security Act (the "Act") on November 3, 1997. [AR 79-80.] The plaintiff also filed an application for SSI.[1] [AR 14, 73, 423.] These applications were denied initially, on reconsideration, and after hearing before an administrative law judge. [AR 14-17, 31-55, 68-71, 73-77.] The Appeals Council denied the plaintiff's request for review on September 27, 2000. [AR 5-7.]

On December 4, 2000, the plaintiff filed a complaint in this Court (CV 00-11137-Mc) seeking to reverse and set aside the Commissioner's final decision denying her requests for benefits. On August 29, 2001, pursuant to a stipulation of the parties, this Court entered an order remanding the case for further proceedings. [AR 473-74.]

On May 15, 2002, a second administrative hearing was held before Administrative Law Judge James Paisley (the "ALJ"). [AR 429-71.] On August 8, 2002, the ALJ filed a decision concluding that the plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. [AR 423-28.] On October 8, 2003, the Appeals Council denied the plaintiff's request for review. [AR 405-06.] Accordingly, the ALJ's decision stands as the final decision of the Commissioner. [AR 405.]

On November 10, 2001, the plaintiff filed the present action. The parties filed a joint stipulation on August 12, 2004.

///

---

[1] A copy of the plaintiff's SSI application is not contained in the file.

**STANDARDS OF REVIEW**

The court must sustain the findings of the Commissioner unless: (a) they are not supported by substantial evidence in the record as a whole; or (b) the Commissioner applied an improper legal standard. See 42 U.S.C. § 405(g); Gordon v. Secretary of Health and Human Services, 803 F.2d 1071, 1072 (9th Cir. 1986). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988). "Substantial evidence" is evidence a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 402; Gordon, 803 F.2d at 1072.

This court must review the record as a whole and consider adverse as well as supporting evidence. See Green v. Heckler, 803 F.2d 528, 529-530 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the court must sustain the Commissioner's decision. See Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984).

**THE FIVE-STEP SEQUENTIAL EVALUATION**

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled. See 20 C.F.R. §§ 404.152, 416.920. First, the Commissioner determines whether the person is engaged in "substantial gainful activity." If so, the Commissioner denies disability benefits. Second, if the person is not so engaged, the Commissioner determines whether the person has a medically severe impairment or combination of impairments. If the person does not have a severe impairment or combination of impairments, the Commissioner denies benefits. Third,

if the person has a severe impairment, the Commissioner determines whether the impairment meets or equals one of a number of "listed impairments." If the impairment meets or equals a "listed impairment," the Commissioner conclusively presumes that the person is disabled. See 20 C.F.R., Pt. 404, Subpt. P, App. 1. Fourth, if the impairment does not meet or equal a "listed impairment," the Commissioner determines whether the impairment prevents the person from performing past relevant work. If the person can perform past relevant work, the Commissioner denies benefits. Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work. The Commissioner can meet this burden by reference to the Medical-Vocational Guidelines ("Grids") at 20 C.F.R., Part 404, Subpart P, Appendix 2, or by relying on vocational expert testimony. See Penny v. Sullivan, 2 F.3d 953, 958-59 (9th Cir. 1993). The person will only be found entitled to disability benefits if she is unable to perform other work. See 20 C.F.R. § 404.1520; Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

**FINDINGS OF THE ALJ**

The plaintiff was born on February 4, 1943. [AR 79.] The plaintiff completed the sixth grade in Mexico and is unable to communicate in English. [AR 14, 434.] The plaintiff has past relevant work experience as a sorter, assembler, and packer. [AR 428.] The plaintiff alleges that she has been unable to work since January 1, 1992, due to migraine headaches and depression. [AR 14, 90.]

The ALJ found that the plaintiff has not engaged in substantial gainful activity since her alleged onset date. [AR 427.] The ALJ

1  then found that the medical evidence established that the plaintiff
2  has severe impairments, including depression and anxiety (improved
3  with medication), and hypertension and headaches (controlled with
4  medication).  [AR 427.]  The ALJ further found that the plaintiff did
5  not have an impairment or combination of impairments listed in or
6  medically equal to one listed in the Act's listing of impairments.
7  See 20 C.F.R. Pt. 404, Subpt. P, App. 1; [AR 427.]
8     The ALJ found that the plaintiff was not entirely credible.  [AR
9  427.]  The ALJ found that the plaintiff had the residual functional
10 capacity to:  lift and/or carry at least 10 pounds frequently and at
11 least 20 pounds occasionally; stand and/or walk more than six hours in
12 an eight-hour period; sit more than six hours in an eight-hour period;
13 and perform more than simple, repetitive tasks.  [AR 428.]  Based on
14 these restrictions, the ALJ found that the plaintiff was able to
15 perform her past relevant work as a sorter, assembler, and packer.
16    Accordingly, the ALJ concluded that the plaintiff was not under a
17 disability, as defined by the Act.  [AR 428.]

**THE PLAINTIFF'S CONTENTIONS**

The plaintiff presents the following contentions:
1. The ALJ's evaluation of the plaintiff's mental impairment is not supported by substantial evidence.  [Joint Stipulation, pp. 8-11, 14-15.]
2. The ALJ erred in finding that the plaintiff was capable of performing her past relevant work. [Joint Stipulation, pp. 15-17, 19-20.]
3. The ALJ erred by failing to present a complete hypothetical to the vocational expert.  [Joint Stipulation, pp. 20-22, 24-25.]

4. The ALJ erred by failing to resolve possible conflicts between the Dictionary of Occupational Titles and the testimony of the vocational expert. [Joint Stipulation, pp. 25-26, 27.]
5. The ALJ erred in rejecting the opinion of the treating physician. [Joint Stipulation, pp. 28-32.]
6. The ALJ erred in discounting the plaintiff's credibility. [Joint Stipulation, pp. 32-35, 37-38.]

**DISCUSSION**

**A.   The Plaintiff's Mental Impairment**

The plaintiff claims that the ALJ's evaluation of her mental impairment is not supported by substantial evidence because the ALJ relied on the opinion of psychiatric consultative examiner Derek Ott, M.D. [Joint Stipulation, pp. 8-10.] In particular, the plaintiff complains that Dr. Ott used the plaintiff's daughter to translate and assist the plaintiff in completing a cognitive questionnaire. [AR 298.] The plaintiff contends that Dr. Ott should have used an official interpreter. She also notes that the record does not contain evidence regarding the daughter's age or ability as an interpreter. [Joint Stipulation p. 10.]

The ALJ's decision to rely on the opinion of Dr. Ott is supported by substantial evidence. The ALJ considered all available evidence, and made a reasonable conclusion based on the psychological reports at issue. [AR 424-25.] The fact that an official interpreter did not assist the plaintiff in completing the cognitive questionnaire and was not present during Dr. Ott's examination does not render Dr. Ott's

opinion invalid. Indeed, the ALJ did not adopt Dr. Ott's opinion wholesale. Rather, the ALJ examined the medical records in totality and made conclusions based thereon. [AR at 424-26.]

As an alternative argument, the plaintiff contends that the ALJ's assessment of her functional limitations conflict with Dr. Ott's opinion. [Joint Stipulation, p. 10.] The ALJ found that the plaintiff had "slight" restrictions in activities of daily living and difficulties in maintaining social functioning, and "seldom" experienced deficiencies in concentration, persistence or pace. [AR 427.] The ALJ also noted that there was "insufficient evidence" of episodes of deterioration. [AR 427.] Dr. Ott, on the other hand, assessed the plaintiff with a Global Assessment of Functioning ("GAF") scale of 55.[2] [AR 301.] The plaintiff contends that Dr. Ott's opinion undermines the ALJ's conclusions about the plaintiff's work-related restrictions.

The GAF scale is intended to be used to make treatment decisions. See Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), Fourth Edition, Text Revision 32 (2000). Neither the Social Security regulations nor case law require an ALJ to determine the extent of an individual's disability based entirely on her GAF score. See, e.g., Howard v. Commissioner of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002)("[w]hile a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy"). Moreover, a review of the medical records shows that the plaintiff did

---

[2] A GAF score of 51 to 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) 32 (4th ed. 1994).

not have a mental impairment that seriously interfered with her ability to work.

Dr. Ott diagnosed the plaintiff with major depression, recurrent, moderate, rule out psychotic features, and rule out anxiety disorder, NOS. [AR 301.] Despite this diagnosis, Dr. Ott found that the plaintiff had "no limitations in terms of her concentration" and was "seemingly able to follow simple commands." [AR 301.] While Dr. Ott opined that the plaintiff "may have problems interacting with people when she is feeling particularly anxious," he also noted that the plaintiff "denied any specific problems interacting with co-workers or the public." [AR 301.] A state agency medical consultant who reviewed the plaintiff's records concluded that the plaintiff had "slight" restrictions in activities of daily living; "slight" difficulties in maintaining social functioning, "seldom" had deficiencies in concentration, persistence or pace, and that there was "insufficient evidence" to evaluate whether the plaintiff experienced episodes of deterioration or decompensation. [AR 324.] Given Dr. Ott's and the medical consultant's findings, the ALJ reasonably concluded that the plaintiff's mental condition did not impose more restrictive functional limitations than those discussed in the ALJ's decision. [AR 427]; Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)(explaining that it is not the court's role to second-guess the ALJ's conclusions); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

Next, the plaintiff complains that the ALJ erred by relying on Dr. Ott's opinion in light of contradictory findings of another examining psychiatrist, John D. Barta, M.D. [Joint Stipulation 10-11.] In February 1999, Dr. Barta examined the plaintiff and diagnosed her with major depressive disorder, single episode, severe without

psychotic features and a possible somatization disorder. [AR 376.] Dr. Barta opined that the plaintiff had "moderate" restrictions in daily living, "moderate" difficulties in maintaining social functioning, "frequent" deficiencies in concentration, persistence or pace, and "continual" episodes of deterioration or decompensation in work or work-like settings. [AR 389.] In evaluating the plaintiff's aptitude to perform unskilled work, Dr. Barta assessed the plaintiff with "poor or none" or "fair" in 16 categories.[3] [AR 387-88.] Dr. Barta's opinion, however, was controverted by the opinion of Dr. Ott. The ALJ was allowed to credit Dr. Ott's findings over Dr. Barta's opinion because Dr. Ott based his report on independent clinical findings. See. e.g., Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1989)("[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict.")  In addition, the ALJ noted that Dr. Barta's assessment of extreme functional limitations was in conflict with the

---

[3] Dr. Barta assessed the plaintiff as "poor to none" in the following categories: remember work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; maintain attention for two hour segment; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions or request assistance; respond appropriately to changes in a routine work setting; deal with normal work stress; and be aware of normal hazards and take appropriate precautions. [AR 387-88.]

plaintiff's own testimony about her daily activities, which included taking care of her disabled husband, going shopping, housecleaning, and cooking.  [AR 425-26, 436-38, 446-48]; see, e.g., Morgan v. Commissioner, 169 F.3d 595, 602-03 (9th Cir. 1999)(when a claimant's testimony about daily activities is inconsistent with a condition that would preclude all work activity, the ALJ may reject a physician's opinion to the contrary); Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990).  The ALJ also noted that Dr. Barta's conclusions were not supported by any written narrative.  Morgan, 169 F.3d at 601 ("[w]here medical reports are inconclusive, 'questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner].'")(quoting Sample v. Schweiker, 694 F.2d 639, 642-43 (9th Cir. 1982)(ALJ acted "well within his prerogative" in ignoring the eight sentence report of a claimant's treating physician after determining that it was conclusory and lacked clinical support).  Accordingly, substantial evidence supports the ALJ's decision to discount Dr. Barta's opinion.  See Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989)(holding that the ALJ's burden in rejecting a physician's opinion is satisfied "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings").

///
///
///
///
///
///
///

**B.     The Plaintiff's Past Relevant Work**

The plaintiff contends that the ALJ erred by failing to make a detailed analysis of the mental demands of her past relevant work, as required by Social Security Ruling ("SSR") 82-62.[4]  [Joint Stipulation, p. 15-16.]  This claim is without merit.

The ALJ's conclusion that the plaintiff retained the residual functional capacity to perform her past work is supported by substantial evidence.  First, the ALJ determined, based on the all evidence, that the plaintiff retained the residual functional capacity to perform a range of light work (lift and carry at least 10 pounds frequently and 20 pounds occasionally, and stand, walk and sit more than six hours in an eight hour workday), limited to simple, repetitive tasks.  [AR 426-28.]  At the hearing, the ALJ questioned the plaintiff about the demands of the plaintiff's past work as a sorter, packer, and assembler.  [AR 440-44.]  Based on the plaintiff's testimony, the vocational expert concluded that the plaintiff's past work was unskilled and ranged from sedentary to light, and that a person with the plaintiff's mental and physical limitations would be capable of performing the plaintiff's past work.  [AR 426, 465.]  The ALJ relied on the vocational expert's testimony in making the step four determination.  [AR 426-27.]  Although the ALJ did not make an

---

[4] SSR 82-62 provides in relevant part:
   In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:
   1. A finding of fact as to the individual's RFC.
   2. A finding of fact as to the physical and mental demands of the past job/occupation.
   3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.


express finding of fact concerning the mental demands of the plaintiff's past work, any error was harmless.  See Curry, 925 F.2d 1127, 1131 (9th Cir. 1991)(harmless error rule applies to review of administrative decisions regarding disability).  None of the work restrictions found by the ALJ is inconsistent with performance of the plaintiff's past work, as described by the plaintiff herself.  [AR 440-44, 465.]  Moreover, the plaintiff had the burden of establishing that she was unable to return to her former type of work.  Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).  When describing her past work at the hearing and in her vocational report, the plaintiff made no mention of any mental requirements.  [AR 85-88, 440-44.]  If the plaintiff, who was represented by counsel at both administrative hearings, desired to place further information on the record concerning the nature of her past work, she had ample opportunity to do so.  Thus, no useful purpose would be served in remanding the case for further proceedings on this issue.

**C.   The Plaintiff's Residual Functional Capacity and the Hypothetical Question Posed to the Vocational Expert**

The plaintiff contends that the ALJ did not include all of the plaintiff's work-related limitations in the hypothetical posed to the vocational expert.  In particular, the plaintiff asserts that the ALJ failed to give proper consideration to the opinion of a state agency medical consultant who assessed the plaintiff with moderate limitations in the ability to carry out detailed instructions and moderate limitations in the ability to interact appropriately with the general public.  [AR 326-27.]  The plaintiff does not present a persuasive claim.

///

"In order for the testimony of a [vocational expert] to be considered reliable, the hypothetical posed must include all of the claimant's functional limitations, both physical and mental[,] supported by the record." Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002)(citation and internal quotation marks omitted).

Here, the ALJ's consideration of the medical evidence was sufficiently accurate to allow the vocational expert to assess the plaintiff's capacity to do work. The ALJ relied on the opinion of the consultative psychiatrist, Dr. Ott, in evaluating the plaintiff's mental condition. [AR 425-26.] The ALJ also considered the opinions of the state agency medical consultants. [AR 326-27, 339-41, 425.] At the hearing, the ALJ asked the vocational expert to assume a person with the plaintiff's age, education, and language abilities, who was capable of performing light work, limited to specific, repetitive tasks. [AR 465.] The vocational expert responded that such a person would be capable of performing the plaintiff's past work as sorter, assembler, and packer. [AR 465.] While the ALJ did not include specific restrictions relating to detailed instructions or working with the public in the hypothetical question, any error was harmless because the plaintiff's past relevant work was unskilled. [AR 465.] Unskilled work is defined as work which "needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. [L]ittle specific vocational preparation and judgment are needed." 20 C.F.R. § 404.1568(a). In addition, "the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people). . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(I). Thus, restrictions relating to detailed instructions and

13

working with the public would not have precluded the plaintiff from performing her past unskilled work as a sorter, assembler, or packer. Accordingly, it was not improper for the ALJ to rely on the vocational expert's testimony.

The plaintiff also argues that the ALJ erred by failing to incorporate restrictions assessed by Nasr Anees, M.D. and Dr. Barta into the hypothetical question. [Joint Stipulation p. 22.]  Because the ALJ properly rejected the opinions of both of these doctors, as discussed more fully in other sections of this Memorandum, the ALJ had no obligation to incorporate their findings into the hypothetical. See, e.g., Magallanes, 881 F.2d at 756-57 (noting that hypothetical questions posed to a vocational expert need not include all alleged limitations, but rather only those limitations the ALJ finds to exist); Martinez v. Heckler, 807 F.2d 771, 773-74 (9th Cir. 1986).

### D.   **The Plaintiff's Past Work and the Dictionary of Occupational Titles**

The plaintiff argues that the ALJ erred by failing to inquire whether the vocational expert's testimony conflicted with the Dictionary of Occupational Titles ("DOT").  The plaintiff cites SSR 00-4p[5] for the proposition that an ALJ eliciting testimony from a vocational expert has the affirmative responsibility to ask about any potential conflict between the expert's testimony and information

---

[5] SSR 00-4p provides, in part:
Occupational evidence provided by a [vocational expert] . . . generally should be consistent with the occupational information supplied by the DOT.  When there is an apparent unresolved conflict between [vocational expert] . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert] evidence to support a determination or decision about whether the claimant is disabled.

14

provided in the DOT.  This argument erroneously assumes that an ALJ must make an automatic inquiry about potential conflicts with the DOT any time a vocational expert testifies.  Such is not the case.  SSR 00-4p.  The text of SSR 00-4p makes clear that such a duty arises only where a conflict "has been identified," or "where there is an apparent unresolved conflict between [vocational expert] evidence and the DOT." SSR 00-4p; Thompson v. Barnhart, 281 F.Supp.2d 770 (E.D. Pa. 2003). Thus, the "ruling requires an explanation only if the discrepancy was 'identified'--that is, if the claimant (or the ALJ on his behalf) noticed the conflict and asked for substantiation." Id. (quoting Donahue v. Barnhart, 279 F.3d 441, 446-47 (7th Cir. 2002).  Here, there is no indication in the record that a discrepancy was noticed between the vocational expert's testimony and the information provided in the DOT.  Therefore, the ALJ did not err in neglecting to inquire about any potential conflicts with the DOT.

### E. The Treating Physician

The plaintiff contends that the ALJ erred by rejecting the opinion of her treating physician, Nasr Anees, M.D., on the issue of whether she had the residual capacity to perform her prior work. [Joint Stipulation, pp. 28-30.]

In November 1998, Dr. Anees completed a physical residual functional capacity questionnaire on the plaintiff's behalf. [AR 364-68.]  Dr. Anees opined that the plaintiff suffered from substantial work-related restrictions due to hypertension, osteoarthritis, obesity, depression and anxiety, and post-menopausal syndrome.  [AR 364-68.]  Dr. Anees found that the plaintiff's pain and other symptoms often interfered with attention and concentration.  [AR 365.]  Dr. Anees noted that the plaintiff:  was able to sit 20 minutes at a time,

for a total of less than two hours in an eight-hour workday and stand one hour at a time for a total of two hours in an eight-hour workday; must be able to walk around every 15 minutes and be permitted to shift positions at will; is able to reach with her right arm 80 percent of the time and reach with her left arm 90 percent of the time during an eight-hour workday; and is likely to be absent from work about three times each month.  [AR 366-68.]

The ALJ rejected Dr. Anees' view of the plaintiff's limitations, in part, because there were no objective clinical findings of signs or symptoms to support his conclusions.  [AR 425.]  The fact that the treating physician's conclusions do not have objective support can constitute a legitimate basis for rejecting them.  See, e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)(upholding ALJ's rejection of treating physician's opinion as unsupported by objective medical findings, treatment notes, or even a clinical observation).  Moreover, the ALJ need not accept a treating physician's opinion which is "brief and conclusionary in form with little in the way of clinical findings to support its conclusion." Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1986).  While the plaintiff asserts that Dr. Anees' treatment records and responses to the questionnaire provide objective support for his view of the plaintiff's limitations, the plaintiff's argument is not supported by the evidence.  [Joint Stipulation, p. 29.]  Thus, the lack of objective evidence was sufficiently specific and legitimate to rebut Dr. Anees opinion.  Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996).

In addition, when determining the plaintiff's work-related restrictions, the ALJ appears to have relied on the opinions of the

state agency medical consultants.  [AR 306-13, 343-50, 424.]  The reports of these non-examining, non-treating physicians, with nothing more, may not be substantial evidence to controvert Dr. Anees' opinion.  See Lester, 81 F.3d at 831; Magallanes, 881 F.2d at 752.  However, the state agency medical consultants' opinions are consistent with other medical evidence, particularly that contained in the report of an examining physician, Sharon Broadbent, M.D.  [AR 302-05, 424.]  Dr. Broadbent assessed the plaintiff as being able to lift and carry 25 pounds, stand and walk for six hours if given breaks every two hours, and sit continuously during an eight-hour workday if given breaks every two hours.  [AR 304-05.]  Because Dr. Broadbent's opinion was based on independent, clinical findings, the ALJ's decision to reject Dr. Anee's opinion was supported by substantial evidence.  Andrews, 53 F.3d at 1041;  Magallanes, 881 F.2d at 752.

**F.    The ALJ Properly Rejected The Plaintiff's Credibility**.

The plaintiff argues that the ALJ rejected her subjective symptom testimony without providing specific, clear, and convincing reasons for doing so.  [Joint Stipulation, pp. 32-35.]  The plaintiff's claim is without merit.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-step analysis.  In the first step, the claimant must produce objective medical evidence of one or more impairments, and show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996) (citing Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)(superseded by statute on unrelated grounds)).  The claimant is not required to produce objective medical evidence of the symptom itself, the severity

17

of the symptom, or the causal relationship between the medically determinable impairment and the symptom. The claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. Smolen, 80 F.3d at 1282. In the second step of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of her symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. Id. at 1284.

Here, the plaintiff testified that she suffered from extreme limitations. She claimed that she was able to sit and stand for 30 minutes at a time, walk for 15 minutes, and lift only three to four pounds. [AR 425, 438-39.] The ALJ noted that the plaintiff's subjective symptom testimony was inconsistent with her acknowledged daily activities, which constituted a specific, clear and convincing reason for discounting her credibility. [AR 425-26]; Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997)(explaining that inconsistencies between testimony and conduct may be considered in weighing a claimant's credibility); see also 20 C.F.R. §§ 404.1529, 416.929 ("we will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your medical history, the medical signs and laboratory findings, and statements by your treating or examining physician or psychologist or other persons about how your symptoms affect you"). The plaintiff admitted that she

helps care for her disabled husband, cleans the house, visits with her grandchildren, cooks, attends church regularly, walks to the market, and shops with her husband. [AR 425-26, 436-38, 446-48.] In addition, the plaintiff admitted that her doctor recommended that she walk. [AR 425, 438.] Although the plaintiff disagrees with the ALJ's interpretation of the evidence, "credibility determinations are the province of the ALJ." <u>Fair</u>, 885 F.2d at 604. Given the ALJ's observations of inconsistencies in the plaintiff's testimony, and extrinsic evidence conflicting with her testimony, substantial evidence supports the ALJ's adverse credibility determination.

## CONCLUSION

After careful consideration of the complaint, the arguments of the parties, the transcript of the record, and in accordance with the foregoing discussion, the magistrate judge finds that the decision of the Commissioner is supported by substantial evidence and that the Commissioner applied the proper legal standards.

## ORDER

IT IS ORDERED that judgment be entered in favor of the Commissioner and against the plaintiff.

Dated:  August 25, 2005

```
              /S/
       _____
       JAMES W. McMAHON
       United States Magistrate Judge
```